**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LINDSAY FERRER, AMY HADDAD and SARAH SORSCHER on behalf of themselves and all others similarly situated, | )<br>)   Case No. 1:16-cv-02162-APM<br>) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| CAREFIRST, INC.; GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC. d/b/a CAREFIRST BLUECROSS BLUESHIELD; CAREFIRST OF MARYLAND, INC., d/b/a CAREFIRST BLUECROSS BLUESHIELD; CARE FIRST BLUECROSS BLUESHIELD; and CAREFIRST BLUECHOICE, INC., | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SETTING OF A FINAL APPROVAL HEARING**

Plaintiffs Lindsay Ferrer, Amy Haddad and Sarah Sorscher ("Plaintiffs" or "Class Representatives"), individually and on behalf of the proposed Settlement Class ("Class"), with respect to the proposed settlement ("Settlement") with CareFirst, Inc., Group Hospitalization and Medical Services, Inc., CareFirst of Maryland, Inc., and CareFirst BlueChoice, Inc. ("Defendants"), respectfully submit their unopposed motion, and incorporated statement of points and authorities in support of their motion, for preliminary approval of class action settlement, certification of settlement class, and setting a schedule leading up to and a date for the final approval hearing. The Settlement Stipulation dated December 10, 2018 ("Stipulation") is Exhibit 1 hereto.  The proposed Preliminary Approval Order is Exhibit A to the Stipulation.

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ......................................................................................1

II.     SUMMARY OF THE ACTION AND BACKGROUND TO THE SETTLEMENT ........4

        A.      Summary of the Pertinent ACA Provisions, Facts and Claims Alleged.................4

        B.      Background to the Settlement.................................................................................7

III.    SUMMARY OF THE SETTLEMENT TERMS .........................................................9

        A.      The Class.................................................................................................................9

        B.      Monetary Relief ...................................................................................................10

        C.      Prospective Relief.................................................................................................12

        D.      Post-Class Period Claims Handling .....................................................................13

        E.      Class Release .......................................................................................................14

        F.      The Notice Program and Settlement Administration.............................................14

        G.      Attorneys' Fees and Expense Application and Payment of Service Awards ........15

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..............................16

        A.      The Class Representatives and Class Counsel Have Adequately
                Represented the Class and Reached a Proposed Settlement That
                Is the Result of Arm's Length Negotiations .........................................................18

        B.      The Settlement Provides Substantial Value and Relief to Class
                Members While Averting the Risk and Expense of Further Litigation.................21

V.      THE PROPOSED NOTICE IS APPROPRIATE AND SHOULD BE APPROVED .......23

VI.     CERTIFICATION UNDER FEDERAL RULES 23(a) AND (b) IS APPROPRIATE.....25

        A.      Plaintiffs Satisfy the Requirements of Federal Rule 23(a) ..................................25

                i.      Numerosity Is Satisfied...............................................................................26

                ii.     Commonality Is Satisfied.............................................................................26

i

iii.     Typicality Is Satisfied ...............................................................................27

iv.     Adequacy Is Satisfied ...............................................................................28

B.     Plaintiffs Satisfy the Requirements of Rule 23(b) .................................................29

VII.     PROPOSED SCHEDULE OF EVENTS ........................................................................31

VIII.     CONCLUSION ...................................................................................................................32

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997)...........................................................................................25, 30

*Ardon v. City of Los Angeles*,
  Case No. BC361469 (Superior Court, County of Los Angeles)............................28

*In re Baan Co. Sec. Litig.*,
  284 F. Supp. 2d 62 (D.D.C. 2003) .......................................................................22

*Bynum v. District of Columbia*,
  217 F.R.D. 43 (D.D.C. 2003).........................................................................26, 31

*Coleman v. Pension Benefit Guar. Corp.*,
  196 F.R.D. 193 (D.D.C. 2000)..............................................................................26

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) ..............................................................................30

*In re Fed. Nat'l Mortg. Assoc. Sec., Derivative, & ERISA Litig.*,
  4 F. Supp. 3d 94 (D.D.C. 2013) ...........................................................................22

*Freeport Partners, LLC v. Allbritton*,
  Case No. CIV.A. 04-2030 (GK), 2006 U.S. Dist. LEXIS 9710 (D.D.C. Mar.
  13, 2006) ...............................................................................................................17

*Garza v. Hargan*,
  304 F. Supp. 3d 145 (D.D.C. 2018) ......................................................................26

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)..............................................................................................27

*Howard v. Liquidity Servs.*,
  322 F.R.D. 103 (D.D.C. 2017)..............................................................................31

*Lightfoot v. D.C.*,
  246 F.R.D. 326 (D.D.C. 2007)..............................................................................25

*Linney v. Cellular Alaska P'ship*,
  151 F. 3d 1234 (9th Cir. 1998) .............................................................................22

*Lockabey v. American Honda Motor Co.*,
  Case No. 37-2010-87755 (Superior Ct., San Diego) ............................................28

*In re Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs. Inc.*,
2003 U.S. Dist. LEXIS 122293 (D.D.C. June 16, 2003) ........................................................24

*In re Lorazepam Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002) ..............................................................................................20

*McReynolds v. Sodexho Marriott Servs., Inc.*,
208 F.R.D. 428 (D.D.C. 2002) ..............................................................................................28

*Osher v. SCA Realty I, Inc.*,
945 F. Supp. 298 (D.D.C. 1996) .............................................................................................17

*Peters v. Nat'l R.R. Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992) .............................................................................................24

*Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litigation)*,
516 F.3d 1095 (9th Cir. 2008) ...............................................................................................17

*Radosti v. Envision EMI, LLC*,
717 F. Supp. 2d 37 (D.D.C. 2010) .........................................................................................20

*Rodman v. Safeway Inc.*,
No. 11-3003-JST (N.D. Cal.) ..................................................................................................29

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ...................................................................................................30

*Thomas v. Christopher*,
169 F.R.D. 224 (D.D.C. 1996), *aff'd in part, rev'd in part,* 139 F.3d 227 (D.C.
Cir. 1998) ................................................................................................................................26

*United States v. District of Columbia*,
933 F. Supp. 42 (D.D.C. 1996) ..............................................................................................16

*In re Vitamins Antitrust Class Actions*,
215 F.3d 26 (D.C. Cir. 2000) .................................................................................................17

*In re Vitamins Antitrust Litig.*,
1999 U.S. Dist. LEXIS 21963 (D.D.C. Nov. 23, 1999) .........................................................20

*In re Vitamins Antitrust Litig.*,
209 F.R.D. 251 (D.D.C. 2002) ...............................................................................................26

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...............................................................................................................27

## OTHER AUTHORITIES

29 C.F.R. § 2590.715-2713(a)(1)...................................................................................5

45 C.F.R. § 147.130(a)(3) .........................................................................................5

Fed. R. Civ. P. 23 *et seq.*.................................................................................. *passim*

William B. Rubenstein, *Newberg on Class Actions*, § 4:51 (5th ed. 2017)..................................30

## I.   **PRELIMINARY STATEMENT**

The proposed Settlement, the detailed terms of which are set forth in the Stipulation[1], provides substantial and essential relief to the members of the Class in the form of both cash payments (including full reimbursement for any cost-sharing incurred) and changes to CareFirst's policies, with respect to comprehensive breastfeeding and lactation support and counseling services ("CLS").  The benefits achieved in the Settlement directly redress the claims in the Action which asserted that Defendants denied Plaintiffs and the members of the Class preventive benefit health care coverage for CLS as was mandated by the Patient Protection and Affordable Care Act ("ACA").

As discussed herein, the Settlement has two comprehensive components encompassing both retrospective and prospective benefits flowing to the Class.   *With respect to the retrospective relief achieved*, the Settlement provides for an authorized Class Member to receive Cash Payments: (i) a CLS Settlement Payment, which is a <u>full</u> reimbursement of the total amount of cost-sharing incurred for a CLS Claim; and, (ii) a Balance Bill Settlement Payment, which is 25% of the difference between an amount actually paid to an out-of-network provider and any reimbursement that had been received from CareFirst for the CLS Claim. Stipulation ¶ 3.1.

Notably, the Settlement is structured so that the CLS Settlement Payment will be paid automatically (based on the information in CareFirst's records) or upon the Class Member completing a simple "check the box" affirmation (done online or by return mail) confirming the identified claim as one for CLS.   Stipulation ¶ 6; Exhibits A-1 (Notice), A-1a (Claims Data Sheet) and A-1c (Proof of Claim-Affirmation).   This feature, which facilitates and expedites the Settlement payments to Class Members, is accomplished by the use of proof of claim forms that

---

[1]  Except where otherwise stated, all capitalized terms are as defined in the Stipulation.

1

are pre-populated with CLS Claim information from CareFirst's records; the pre-populated forms will be sent to Class Members with the proposed Notice. *Id.* An additional benefit of the Settlement would allow Class Members who do not receive a Claims Data Form or a Pre-Populated Proof of Claim Form, but who believe they have an Authorized Claim for CLS (*e.g.,* because a previously submitted claim was improperly coded), to complete and timely submit a Proof of Claim with appropriate documentation for review and processing by the Claims Administrator. Stipulation ¶ 6.2.3, Exhibits A-1 (Notice), and A-1b (Blank Proof of Claim).

Moreover, with respect to the Settlement's benefits, Plaintiffs highlight that there is <u>no</u> limit on the total dollar amount of the cash settlement payments that CareFirst may make to Class Members for Authorized Claims. Based on CareFirst's records, just the CLS Settlement Payments that are automatically paid and paid upon affirmation would approximate $3.6 million. This amount, however, represents a portion of the cash settlement payments since it does not include the Balance Bill Settlement Payments and the additional CLS Settlement Payments to be made for Authorized Claims submitted by Class Members through proofs of claim in accordance with the terms of the Settlement.

*With respect to the prospective relief achieved*, the Settlement provides for measurable changes to CareFirst's policies with respect to CLS (the implementation of which will begin by no later than 14 business days after the entry of the Preliminary Approval Order), including that Defendants will: make changes to CareFirst's online provider search tool so that it is searchable by lactation and breastfeeding related search terms; endeavor to enter into contracts directly with CLS Providers including group health care practices that specialize in the provision of CLS; and conform their policies and procedures to reflect and convey information necessary to effectuate the terms of the Stipulation, including by implementing a revised Medical Policy for Lactation

2

Consultations.  Stipulation ¶ 3.2. Plaintiffs also negotiated, to account for the expected passage of time in implementing the foregoing, that for a period of two years following the Effective Date, Defendants would adjudicate CLS Claims in a manner consistent with the terms of the Settlement (without any prospective release being by such plan participants as part of the Settlement). Stipulation ¶¶ 3.3, 3.3.8.   With: the advent of new laws protecting the right to breastfeed (and the enforcement of existing laws such as the Pregnancy Discrimination Act); the increased visibility and knowledge surrounding the ACA's CLS preventive services mandate; and, the increased insurer (and specific to CareFirst, via the Settlement) transparency into the CLS benefit, its availability as a covered preventive service, and CLS network expansion, the demand for and use by CareFirst's insureds of CLS and preventive care coverage for CLS is proliferating. The value (monetary and intangible) achieved from the prospective relief is substantial. While it can be viewed relative to the retrospective cash settlement payments, its value may well-exceed such payments.

Finally, importantly, the Settlement provides that CareFirst will separately pay the costs of Notice and Claims Administration, the award of Plaintiffs' attorneys' fees and expenses, and Class Representative Service Awards.  *See* Stipulation ¶¶ 3.1.3, 3.3.7, 5.7, 6.8 and 8.3. Therefore, the payments to the Authorized Claimants will not be reduced by any such costs, a feature that assures delivery of full settlement benefits to Class Members.

Accordingly, the Settlement is comprehensive and meaningful in addressing the harms alleged and provides a substantial monetary recovery, including full reimbursement for cost-sharing through the CLS Settlement Payment. The Settlement is beyond fair, reasonable and adequate.  Therefore, Plaintiffs respectfully request, pursuant to Federal Rule of Civil Procedure Rule 23(e) ("Rule 23"), the entry of the Preliminary Approval Order (Exhibit A to the

Stipulation) which provides for: (a) preliminary approval of the class Settlement; (b) conditional certification of the Action as a class action; (c) appointment of Chimicles & Tikellis LLP as Class Counsel for the purposes of the Settlement; (d) approval of the form and dissemination of the Notice and Proofs of Claim, and publication of the Summary Notice (Exhibits A-1, A-1a-1d, and A-2 to the Stipulation), which Notice and Claims Administration will be handled by The Angeion Group; and (e) a schedule leading up to and a date for the Final Approval Hearing.

## II.     SUMMARY OF THE ACTION AND BACKGROUND TO THE SETTLEMENT

### A.     Summary of the Pertinent ACA Provisions, Facts and Claims Alleged

The ACA added Section 2713 to the Public Health Service Act, requiring that non-grandfathered health plans "must provide coverage for all of the following items and services, and may not impose any cost sharing requirements for...(i) Evidence-based items or services that have in effect a rating of A or B in the current recommendations of the United States Preventive Services Task Force [USPSTF] …; [and] (iv) with respect to women,…evidence-informed preventive care and screening provided for in comprehensive guidelines supported by the Health Resources and Services Administration [HRSA]….".   CLS as a preventive health service was provided for by both (i) the HRSA 2011 Guidelines, titled "[b]reastfeeding support, supplies, and counseling"[2] and (ii) the USPSTF, as an evidence-based service that has in effect a B rating.[3]

---

[2] HRSA described breastfeeding support, supplies and counseling as "[c]omprehensive lactation support and counseling, by a trained provider during pregnancy and/or in the postpartum period, and costs for renting breastfeeding equipment," HRSA, *Women's Preventive Services Guidelines* (2011), and, HRSA later reiterated breastfeeding support as a mandated preventive health service, described as "[c]omprehensive lactation support services (including counseling, education, and breastfeeding equipment and supplies) during the antenatal, perinatal, and the postpartum period to ensure the successful initiation and maintenance of breastfeeding"), HRSA, *Women's Preventive Services Guidelines* (December 20, 2016).

[3] The 2008 USPSTF recommendation on breastfeeding stated that breastfeeding support includes "interventions…after birth to promote and support breastfeeding", USPSTF, 2008 Archived

Starting with the first plan or policy year beginning on or after August 1, 2012,  plans were to provide CLS without imposing "cost sharing," including "a copayment, coinsurance, or a deductible," on plan participants. 29 C.F.R. § 2590.715-2713(a)(1).  Further, the ACA provided that while "[i]n providing 'coverage,' plans do not need to maintain a network of providers of lactation counseling…if the plan does not provide the service in-network, it cannot impose cost sharing when participants in the insurance plan receive services from out-of-network providers." 45 C.F.R. § 147.130(a)(3).

Plaintiffs and proposed Class representatives, Lindsay Ferrer, Amy Haddad, and Sarah Sorscher, sought CLS and, consequently, coverage for their CLS Claims from Defendants, after the birth of their children. Complaint, Docket No. 1, at ¶¶13-15, 71-85.  When each Plaintiff sought to identify CareFirst's Participating Providers of CLS, they were unable to do so, and were informed that Defendants had no network providers for CLS. *Id*. at ¶¶ 71, 77, 82.  Absent the identification of and access to any network providers of CLS, each Plaintiff sought services out-of-network and submitted claims to Defendants for coverage which Plaintiffs alleged were not adjudicated in accordance with the ACA mandate. *Id*. at ¶¶ 72-76, 78-81, 83-85.

It was determined, based on significant investigation and factual and legal research by Plaintiffs' Counsel and their consultants[4] (*see infra*), and based on the investigation of its clients'

---

Final Recommendation Statement for Breastfeeding, and on October 25, 2016 USPSTF updated its 2008 recommendation and stated that "[t]he scope of the review and type of interventions recommended did not change [from 2008]", USPSTF Final Recommendation Statement (October 25, 2016).

[4]  The use of consultants was essential to secure the results achieved in the Settlement. GlenDevon Group, a financial consulting firm, worked together with a data analytics firm, Avancer Group, Inc., and Help4Access, an outsource programming specialist, to analyze and categorize all of the potential CLS claims.  Plaintiffs' Counsel and GlenDevon Group called on nationally-recognized lactation specialist, Dr. Jane Morton, to assist in identifying the codes and code combinations for the "no proof of claim" category.

claims, that, *inter alia,* the Plaintiffs' experiences with CareFirst and its treatment of coverage for CLS were not unique to them, CareFirst did not have network providers of CLS, and CareFirst was, at minimum, inconsistently adjudicating CLS claims through the improper application of cost-sharing and denial of CLS claims.

Accordingly, on October 28, 2016, Plaintiffs commenced this Action challenging whether Defendants provided insureds preventive services coverage for CLS as mandated by the ACA.  The Action alleged that Defendants' treatment of coverage for CLS impacts thousands of insureds, retrospectively (their having paid cost-sharing for the preventive service) and prospectively (their continuing to pay cost-sharing and not able to identify Participating Providers of CLS), in violation of the ACA, the Employee Retirement Income Security Act ("ERISA"), and CareFirst's plan documents. Complaint, Dkt. 1, at ¶¶ 16-23, 99-106, 116-127, 139-142.

Plaintiffs alleged that, contrary to the intent and purpose of the ACA's preventive services mandate for CLS, Defendants' conduct improperly shifted costs to Plaintiffs and other CareFirst insureds who obtained CLS from out-of-network providers and further that Defendants improperly imposed cost-sharing, in processing CLS claims.  Through the Action Plaintiffs sought, on behalf of themselves and all other similarly situated insureds, equitable, declaratory, injunctive and monetary relief, including, monetary damages, the reprocessing of CLS claims, enjoining Defendants from further alleged violations of the duties, responsibilities, and obligations under ACA, ERISA and the plans with respect to CLS, and requiring adherence to practices and policies that comported with such duties concerning CLS.  *Id.* at ¶¶ 10-12, 107, 116-127, 139-142. As discussed herein, Plaintiffs have achieved those goals of the Action through this proposed Settlement.

B.      **Background to the Settlement**

On January 13, 2017, the Defendants moved to dismiss the complaint in its entirety for lack of constitutional standing [Docket No. 9], which the Court denied on July 17, 2017 [Docket No. 17].   On July 27, 2017, the Defendants moved for reconsideration [Docket No. 16], which the Court denied on August 14, 2017.  [Docket No. 20].

In the wake of the Court's August 14, 2017 Order, the Parties, through their respective counsel, determined to engage in arm's-length discussions and to exchange pertinent information about CLS and CareFirst's coverage of CLS, with the aim of achieving a potential resolution of the claims asserted in the Action.  These activities comprised several in-person meetings, each lasting several hours, which required, in addition to the Parties' counsel, the involvement of Plaintiffs' consultants, Defendants' coding expert, CareFirst's Senior Vice President of Provider Network Services, and other CareFirst legal and operational personnel.  Those meetings were augmented by the Parties' conducting dozens of telephonic conference calls that involved the Parties' counsel and consultants.  Key CareFirst personnel were involved throughout the process and at various times included those with responsibility for CareFirst's provider network services, operations, medical policies, credentialing and provider contracts, coding, website/IT capabilities, and claims (from IT, billing, clinical and adjudication perspectives).   As part of these extensive discussions, the Parties discussed and evaluated, *inter alia*, Defendants' CLS policy; Defendants' adjudication of claims for CLS; the information provided to insureds and providers concerning CLS coverage; Defendants' network composition with respect to CLS; evaluation of Defendants' credentialing and medical policies; and the accessibility of information about CLS and network CLS providers. The Parties also engaged in extensive, and often contentious, discussions and exchanges of legal and factual analyses about "balance bill"

7

payments under the provisions of the ACA and the preventive services cost-sharing construct.

Among information secured by Plaintiffs was the production of CareFirst's CLS Claims data. Plaintiffs, with the knowledge and assistance of their subject matter and technology/coding consultants, researched and prepared requests for the production of the CLS Claims that were submitted by insureds to CareFirst during the Class Period. The Parties had several conferences to address their disagreements as to the Claims that should be pulled, with such discussions involving persons informed on the provision of, clinical indications for, and billing of CLS. The Parties discussed and analyzed the various procedure, facility and diagnosis codes that Plaintiffs identified as reasonable for a provider of CLS (pre-natal through post-partum) to utilize when submitting an invoice to a health plan or a superbill to a patient for use in seeking reimbursement from CareFirst. Defendants ran and produced over six years of Claims Data consisting of over a half a million claims which were individually analyzed by Plaintiffs' consultants. As part of the Settlement, the Parties then negotiated a Claims Administration process, which as noted *infra,* Section III.B., is important in the context of this Settlement. The foregoing topics were also the subjects of countless emails exchanged between Plaintiffs and Defendants, and their respective team members.

In sum, Plaintiffs and Defendants worked hard, diligently, and on a fully informed basis for more than a year to develop a Settlement framework that provides for comprehensive and substantial historical/retrospective and prospective relief.

On September 14 and 26, 2018, the Parties informed the Court that they had reached agreement on the principal terms of the Settlement, but were continuing to review and categorize historical claims data. Over the ensuing weeks, the Parties completed their negotiations and

finalized their memorializing of the Settlement as reflected in the Stipulation and exhibits thereto.  On December 10, 2018, the Parties executed the Stipulation, Exhibit 1 hereto.

## III.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Class

The Settling Parties have provided in the Stipulation, for Settlement purposes, to stipulate to the certification of the Class consisting of all Persons who are or were participants in or beneficiaries of any non-Grandfathered Health Plan[5] sold, underwritten or administered by Defendants in their capacity as insurer or administrator, who did not receive full coverage for and/or reimbursement for CLS received on or after August 1, 2012 through August 31, 2018. Stipulation ¶ 1.7.  Excluded from the Class are: (a) Defendants, their subsidiaries or affiliate companies, their legal representatives, assigns, and successors; (b) members of the Federal Employees Health Benefits ("FEHB") Program, including members of the Blue Cross and Blue Shield Service Benefit Plan ("FEP")[6]; and, (c) any Person who timely and validly requests exclusion from the Class.  Stipulation ¶ 1.7.

The Claimants and potential Class Members have been identified through Defendants' records by the Parties, including by Plaintiffs' Counsel and their consultants as part of a detailed review and analysis of thousands of potential CLS Claims submitted to Defendants and provided to Plaintiffs' Counsel in discovery.

[5] "Non-Grandfathered Health Plan" means: (i) any health insurance policy created or purchased after March 23, 2010, and (ii) any health insurance policy created or purchased on or before March 23, 2010 that subsequently lost its grandfathered status.  The ACA, and its mandate with respect to preventive care coverage for CLS, only applies to Non-Grandfathered Health Plans.

[6]  With respect to exclusion b., the lawsuit was not filed on behalf of, and the Settlement neither applies to nor binds members of the FEHB Program and FEP, because the ACA does not apply to federal health plans.  However, the changes to CareFirst's policies regarding CLS that are accomplished by the Settlement and the proposed prospective relief will be applied to the members of CareFirst's FEHB Program and FEP. *See* Stipulation fn. 3 and ¶ 3.1.4, 3.2.

**B.**      **Monetary Relief**

The Settlement secures the payment by Defendants of the CLS Settlement Payment and/or the Balance Bill Settlement Payment to each Authorized Claimant for each Authorized Claim.  The CLS Settlement Payment is a cash payment equal to the total amount the Authorized Claimant: (i) paid out-of-pocket as co-payment(s); (ii) paid out-of-pocket as co-insurance; and (iii) had applied to his/her deductible.  The CLS Settlement Payment represents a <u>full</u> recovery of the cost-sharing imposed for a CLS Claim by CareFirst.  Stipulation ¶¶ 1.15, 3.1.  To the extent that no payment was made by CareFirst during the Class Period for the CLS Claim, *e.g.,* the CLS Claim was denied, the CLS Settlement Payment will equal the total amount of the out-of-pocket cost paid by the Authorized Claimant for the Authorized Claim subject to the 25% balance bill limitation.  Stipulation ¶¶ 1.3, 3.1.  A Class Member may recover either or both types of settlement payments.

Further, importantly, the administration of the Settlement and the Settlement Payments is provided for in the Stipulation ¶ 6.  It specifically provides for administration to be accomplished in a manner that facilitates and promotes payments to the Class Members. Specifically, the Settlement provides for the use of Pre-Populated Claims Forms, meaning the Claims Data Sheet and certain Proofs of Claim will be sent, with the Notice to the Class Members identified from CareFirst's records, populated with all information pertinent to the CLS Claim as well as the amount of the CLS Settlement Payment. The Settlement has established different proofs of claim to facilitate the processing of and payment to primarily four categories of claims and claimants:

(1) A Claims Data Sheet (Exhibit A-1a), will be sent to Class Members whose CLS Claims, according to CareFirst's records, reflect the CLS was received from lactation specialists/lactation consultants or included codes for lactation and breastfeeding

specific clinical indications. Class Members receiving the Claims Data Sheet, which will be pre-populated with pertinent CLS Claim information, will <u>automatically</u> receive the CLS Settlement Payment listed without responding or submitting a proof of claim.  Stipulation ¶ 6.1.

(2) The Proof of Claim Form- Affirmation Required (Exhibit A-1c), will be sent to Class Members whose CLS Claims, according to CareFirst's records, did not reflect a lactation-specific code but the patient's age together with the clinical indication reflected a high correlation to lactation services and/or to the type of provider who delivers lactation services.  Class Members receiving this Proof of Claim, which will be pre-populated with pertinent CLS Claim information, will receive the CLS Settlement Payment listed once the claimant affirms (online or by return mail), by a "check the box" affirmation, that the claim was for CLS.   Stipulation ¶ 6.2.1.

(3) The Proof of Claim Form – Denial (Exhibit A-1d) will be sent to Class Members whose CLS Claims, according to CareFirst, were denied in full.  Class Members receiving this Proof of Claim (again, populated with the denied CLS Claim information) shall have the opportunity to have Defendants investigate and determine the nature of the denial (akin to a re-opening of an appeal or reprocessing). Within sixty (60) days of receipt of the Proof of Claim Forms and documentation, Defendants shall send back to the Claims Administrator and Class Counsel its determination of the nature of the denial, and, if a CLS Settlement Payment is to be made, the amount of the CLS Settlement Payment. Counsel will receive and review Defendants' determinations, and challenge and/or confer with Defendants about any denials or the amount of the CLS Settlement Payment.  Stipulation ¶ 6.2.3.

11

(4) Also, Class Members may complete and timely submit, along with supporting documentation, a Blank Proof of Claim seeking a Settlement Payment for an Authorized Claim that is not reflected in a Claims Data Form or a Pre-Populated Proof of Claim Form. Stipulation. Stipulation ¶ 6.2.3.

For all of the above categories, in order to receive a Balance Bill Settlement Payment the Class Member must respond and submit proof of having paid any Balance Bill and the amount of such payment. Stipulation ¶ 6.2.4.

In order to allocate claims into the above categories, Plaintiffs' consultants reviewed and analyzed over a half a million claims produced by CareFirst that had the potential to involve CLS during the Class Period.

The Claims Administrator (the Angeion Group) will oversee the administration of the Settlement and the payments of the CLS Settlement Payments and Balance Bill Settlement Payments. And, all Administration Expenses will be paid by Defendants. Stipulation ¶ 6.8.

## C.     Prospective Relief

The Settlement accomplishes broad and meaningful prospective relief that is intended to assure that CareFirst's policies and procedures with respect to CLS fully comply with the ACA. Stipulation ¶6.2.1.  Broadly, the prospective relief achieved serves to promote, facilitate and accomplish: the addition of Participating CLS Providers to CareFirst's networks; and providing CareFirst's insureds with (and the tools to access) relevant information about CLS, CLS coverage, and Participating CLS Providers.

Specifically, as described fully in ¶ 3.2 of the Stipulation, the Settlement provides for:

(1) **A revised CareFirst Medical Policy** 4.01.005 titled "Lactation Consultations" that reflects information about the scope of CLS, CLS providers, and billing codes for CLS.

(2)   **Enhanced Network of CLS Providers:** CareFirst's agreement to endeavor to enter into contracts directly with: (i) trained providers of CLS, including an IBCLC or CLC, who have a Medical License; and group health care practices that specialize in the provision of CLS ("CLS Group Practices").   Relatedly, Defendants will disseminate a Contracting Notice (Exhibit D to the Stipulation) stating that Defendants are contracting with CLS Providers and widely disseminate the Contracting Notice to at least the Persons and groups enumerated in the Stipulation.

(3)   **Changes to Defendants' policies and procedures**, including with respect to contracting and credentialing, to: (i) reflect and convey information necessary to effectuate the terms of this Stipulation; (ii) communicate to prospective Participating Providers the process for applying for credentialing and contracting with Defendants with respect to CLS; and (iii) reflect that the categories of CLS Providers that are eligible to become a Participating Provider of CLS.

(4)   **Status of Contracting.** Plaintiffs' Counsel will review, until the first anniversary of the Effective Date of the Settlement, the results of Defendants' contracting with CLS Providers; and, Defendants will provide detailed reports about such efforts to Plaintiffs' Counsel every 60 days until one-year after the Effective Date of the Settlement.

(5)   **Providing Information to Plan Participants and Providers.**  In addition to the Medical Policy, the Parties have addressed insured and provider-facing materials and tools to reflect pertinent information concerning CLS, including by: (i) making changes to CareFirst's Preventive Service Guidelines; (ii) creating a CLS Reference Page (Exhibit F to the Stipulation) to be displayed on CareFirst's website; (iii) modifying Defendants' provider finder website, including that it will be searchable by lactation and breastfeeding related search terms, as reflected in Exhibit E to the Stipulation, and (iv) establishing that a list of Participating Providers of CLS will be provided by CareFirst.

**D.     Post-Class Period Claims Handling**

Accounting for the fact that certain of the prospective relief, *e.g.,* contracting with CLS

Providers takes time, and to ensure then, that during such time, CLS Claims after the end of the

Class Period beginning as of September 1, 2018 are handled in accordance with the ACA and

consistent with this Settlement, the Settlement also provides in ¶ 3.3 of the Stipulation a process

by which CLS Claims that are made after the end of the Class Period and for a period of two

years following the Effective Date of the Settlement will be reviewed and adjudicated as a preventive benefit under the ACA without the CareFirst Plan Participant incurring cost-sharing. The Angeion Group will also handle the administration of the Post-Class Period Claims Handling, and Defendants will pay all related fees and expenses for such services. It should be noted that the Stipulation expressly provides that the Plan Participants who participate in the Post-Class Period Claims Handling process are not part of the Class and are not releasing any claims as part of the Settlement.

 **E.** **Class Release**

As consideration for the monetary relief under the Settlement Agreement, Defendants will receive a Release from Settlement Class Members with respect to Released Claims. *See* Stipulation ¶¶ 1.32-1.36, 1.39. If the Settlement receives final approval, and the Judgment is entered and becomes Final (*id.* at ¶¶ 1.16-1.17, 1.20), the Action with be dismissed with prejudice (*id.* at ¶¶ 2.3, 9.1).

 **F.** **The Notice Program and Settlement Administration**

The Settlement's robust Notice and Claims Administration Plan (the latter discussed *supra*, Section III. B) will ensure that the maximum number of Class Members will receive the payments to which they are entitled. The Notice and Claims Administration (including the distribution of the Settlement payments, as well as the Post-Class Period claims handling process) will be handled and overseen by The Angeion Group, a well-respected, nationwide claims administrator.

The Claimants and potential Class Members have been identified through Defendants' records by the Parties, including by Plaintiffs' Counsel and their experts as part of a detailed review and analysis of thousands of potential CLS Claims provided to Plaintiffs' Counsel and

their experts in discovery. Stipulation ¶¶ 3.1.4, 5.4.  In addition, potential Class Members will be notified of the Settlement in accordance with ¶ 5.4(b) of the Stipulation which provides for Notice to be mailed to all insureds in CareFirst's records that had submitted a claim for a live birth to CareFirst during the Class Period.

The Notice plan provides for: (i) direct mail of the full Notice; (ii) the creation of a Settlement website; (iii) the creation of a toll-free telephone number; and (iv) the pre-populated proofs of claim accompanying the Notices sent to Class Members whose CLS Claims appeared in Defendants' records. Additional information, including copies of the Notice and Blank Proofs of Claim, will be available on the Settlement Website, and/or upon written or telephonic request. *See* Exhibit A-1 to the Stipulation, Notice at pg. 1).

The Notice includes, among other information, a context-appropriate description of the Settlement, the date by which Settlement Class Members may exclude themselves from the Settlement Class or object to the Settlement, the address of the Settlement website; and the number of the toll-free telephone line. *Id.* at Exhibit A-1, Notice at pgs. 9, 11, 13.

In addition, no later than ten calendar days after the mailing of the Notice, the Claims Administrator shall cause the Summary Notice (*id.*, Exhibit A-2 to the Stipulation) to be published once in PRNewswire, the Washington City Paper and the Baltimore Sun, all publications geographically relevant to CareFirst's insureds.

Moreover, all Notice costs (including for mailing and publication) will be paid by CareFirst separate and apart from any payment to the Class Members. Stipulation ¶ 5.7.

**G.** **Attorneys' Fees and Expense Application and Payment of Service Awards**

Under the Stipulation ¶¶ 8.1-8.2, Plaintiffs' Counsel shall file a Fees and Expenses Application seeking (a) an award of fees and expenses in an aggregate amount not to exceed $3

million[7] and (b) the approval of a Service Award of $2,500 to be paid to each Plaintiff. Defendants have reserved the right to oppose Plaintiffs' Counsel's Fees and Expenses Application. *Id.* The payment of the court-approved Attorneys' Fees and Expenses and Service Awards will be made by Defendants separately from the monetary relief available to the Settlement Class.  Stipulation ¶ 8.3.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Approval of a proposed class action settlement is a two-step process that begins with preliminary approval of the settlement, which is then followed by the giving of notice to class members informing them of the final approval hearing at which the Court considers final approval of the settlement.

Pursuant to Rule 23(e)(1)(A) and (B), at the preliminary approval stage the Court must "determine whether to give notice of the proposal to the class" and the "court must direct notice...if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and, (ii) certify the class…"  Having achieved the goals of the Action in the Settlement, Plaintiffs amply make such showing here.

Rule 23(e)(2) provides for judicial approval of any compromise of claims brought on a class basis if the proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *see also United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996) ("'The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine

---

[7] In order to provide the Court with quantitative context, it is expected that litigation expenses, principally comprising costs of consultants, will approximate $750,000.  Plaintiffs' Counsel's collective lodestar at the point of final settlement approval is expected to approximate $1-1.2 million. That amount will further increase as Class Counsel participates in the claims administration process.

that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that

there has been valid consent by the concerned parties.'") (quoting *Citizens for a Better Env't v.

Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983)).

In deciding whether to grant preliminary approval of a settlement agreement, the Court

has a duty to ensure that the proposed settlement is "fair, adequate, and reasonable and is not the

product of collusion between the parties." *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30

(D.C. Cir. 2000); *accord Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litigation)*,

516 F.3d 1095, 1100 (9th Cir. 2008). Under Rule 23(e)(2), the considerations as to whether a

Settlement is fair, reasonable and adequate are whether

> (A)   The class representatives and class counsel have adequately represented the class;
>
> (B)   The proposal was negotiated at arm's length;
>
> (C)   The relief provided for the class is adequate, taking into account;
>> i.   the costs, risks, and delay of trial and appeal;
>> ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>> iii. the terms of any proposed award of attorney's fees, including timing and payment; and
>> iv.  any agreement required to be identified under Rule 23(e)(3); and,
>
> (D)   the proposal treats Class Members equitably relative to each other.

Moreover, "[p]ublic policy in this Circuit favors settlement of class actions . . . ." *Freeport

Partners, LLC v. Allbritton*, Case No. CIV.A. 04-2030 (GK), 2006 U.S. Dist. LEXIS 9710, at

*26 (D.D.C. Mar. 13, 2006). "In the context of class actions, settlement is particularly

appropriate given the litigation expenses and judicial resources required in many such suits."

*Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) (internal citations omitted).

As outlined below and *supra* in Sections II and III, the Settlement meets each of the

requirements of being fair, adequate, and reasonable and, accordingly, this Court should grant

preliminary approval of the Settlement.

**A.**     **The Class Representatives and Class Counsel Have Adequately Represented the Class and Reached a Proposed Settlement That Is the Result of Arm's Length Negotiations**

Chimicles & Tikellis LLP (proposed Class Counsel) and the Plaintiffs (proposed Class Representatives) filed a groundbreaking and important Action seeking to enforce a preventive services mandate established by the ACA.  They defeated Defendants' Motion to Dismiss, and proceeded efficiently into meaningful discovery and settlement discussions. The Action, and ultimately the proposed Settlement which achieves full recovery of cost-sharing imposed on the insureds by CareFirst for CLS, plus significant prospective relief, are the products of significant, diligent and years' long investigation, and factual and legal research by Plaintiffs' Counsel and their consultants, including:

- Investigation, research and analysis of the provisions of the ACA and its legislative history;

- Investigation, research and analysis of the preventive services benefits mandate provided for under the ACA;

- Review and analysis of regulations, information, guidance and Frequently Asked Questions ("FAQs") issued by the Departments of HHS, Labor, and the Treasury (the "Tri-Departments"), which were charged with implementing the ACA, including PHS Act Section 2713;

- Review of commentary by practitioners and industry experts about CLS and CLS coverage under the ACA;

- Consultation with industry experts and practitioners about CLS and CLS coverage under the ACA, and implementation of CLS coverage;

- Conducted informational meetings and fact gathering with lactation organizations and advocacy and policy groups, such as the National Women's Law Center located in Washington, D.C.;

- Investigation into the handling of coverage of CLS by other insurance companies;

- Review and investigation of CareFirst's outward, consumer facing policies and statements concerning CLS (including CareFirst's Medical Policies and Preventive Service Guidelines);

- Analysis of CareFirst's positions and insureds' assertions/declarations in proceedings before the Maryland Insurance Commissioner concerning CLS;

- Analysis of CareFirst's plan documents and Plaintiffs' claims and explanation of benefits with respect to CLS;

- Plaintiffs' propounding, receipt and analysis of discovery and information from CareFirst with respect to its policies on CLS coverage, its network composition of CLS providers, and its adjudication of CLS Claims;

- Significantly, Plaintiffs sought and ultimately were provided, in multiple productions, the CLS claims submitted to CareFirst from August 1, 2012 through August 30, 2018, including the amount of cost-sharing applied for each Claim; and,

- Plaintiffs' counsel and consultants were successful in reaching agreement with the CareFirst team with respect to the creation of the four claims categories, the characteristics of the claims that would populate each category, and the allocation of all the potential CLS Claims into its proper category. Not only was this a monumental achievement, but it made it possible for the Parties to reach agreement

19

for "no proof of claim" and the simple "affirmation" proof of claim categories that could only be possible by significant groundwork being performed before submission of the Settlement for Court approval.

Following this extensive investigation and analysis, Class Counsel and the Class Representatives negotiated and secured for the Class the proposed Settlement.[8]  Both Parties' counsel are qualified and competent litigators, well-positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. Class Counsel has successfully handled national, regional, and statewide class actions throughout the United States in both federal and state courts. (*See* Exhibit 2, hereto, C&T Firm Resume).

From these facts, the Court can ascertain that the proposed Settlement is the product of serious, informed, non-collusive negotiations.[9]  Since the proposed Settlement is the result of investigation, discovery and arm's-length negotiations between experienced, informed counsel, the Settlement easily satisfies Rule 23(e)(2)(A) and (B), in assessing fairness, reasonableness and adequacy in the context of a preliminary approval motion.

---

[8]   This Settlement was achieved after the parties had the benefit of informal, but extensive, discovery to evaluate the merits of the case and possibility of settlement. Courts in this District have repeatedly held that even swift settlements without any discovery should be approved. *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 62 (D.D.C. 2010) ("In determining whether a proposed class action settlement is fair, adequate, and reasonable, courts consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery."); *see also In re Vitamins Antitrust Litig.*, 1999 U.S. Dist. LEXIS 21963, *28 (D.D.C. Nov. 23, 1999) ("The pursuit of early settlement is a tactic that merits encouragement; it is entirely appropriate to reward expeditious and efficient resolution of disputes") (internal citations omitted); *In re Lorazepam Antitrust Litig.*, 205 F.R.D. 369, 377-78 (D.D.C. 2002) ("[E]arly settlement of these types of cases is encouraged.").

[9]   To the latter point, as noted *supra* at Section III.G., Defendants have reserved the right to oppose Class Counsel's Fees and Expense Application.

**B.**     **The Settlement Provides Substantial Value and Relief to Class Members While Averting the Risk and Expense of Further Litigation**

In assessing adequacy of the relief provided for the Class the Court takes into account:

- under Rule 23(e)(2)(C), the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; the terms of any proposed award of attorney's fees, including timing and payment; and any agreement required to be identified under Rule 23(e)(3);

    and,

- under Rule 23(e)(2)(D), the proposal treats Class Members equitably relative to each other.

First, the relief the Settlement provides for Class Members is outstanding. The Settlement achieved here provides for a full-recovery of the cost-sharing imposed by CareFirst for CLS Claims, among other cash and material prospective relief benefits.  In addition, there is no limit on the amounts that CF will pay.  Based on CareFirst's data as reviewed and analyzed by Plaintiffs and their consultants: over 10,000 claims representing approximately $400,000 of CLS Settlement Payments will be paid automatically; approximately 90,000 claims representing over $3.2 million of CLS Settlement Payments will be paid upon simple affirmation by the Class Member that the Claim was for CLS; and, for approximately 20,000 claims for which coverage was denied, Class Members will have the opportunity to receive a CLS Settlement Payment if the denial was based on the claim being a CLS Claim or because the CLS provider was not a network provider.  Moreover, Class Members may timely complete and submit a Blank Proof of Claim for an Authorized Claim that is not reflected in a Claims Data Form or a Pre-Populated Proof of Claim Form.  Plus, Class Members who did incur a balance bill have the opportunity to provide proof of the existence and amount of such payment, and receive the Balance Bill Settlement Payment. *See, supra,* Section III.B. Furthermore, Notices and blank proofs of claim

will be sent to CareFirst insureds who had a live birth during the Class Period. *See* Stipulation ¶ 5.4. Additionally, as detailed, *supra*, Section III. C., the Settlement also includes valuable prospective relief, as well as mechanisms to affirmatively address and apply the Settlements' benefits to CLS Claims that are submitted during the two years following the Effective Date, as the Defendants implement new prospective relief (without requiring any prospective release from those future insureds as part of the Settlement). *See* Stipulation ¶¶ 3.2, 3.3.

Second, CareFirst will pay all Notice and Claims Administration costs, as well as court-approved attorneys' fees and costs and Service Awards, in addition to the monetary relief provided to the Class Members. *See* Stipulation ¶¶ 3.1.3, 3.3.7, 5.7, 6.8, and 8.3.

Third, by any measure, the monetary relief provided by the Settlement – full recovery for cost-sharing - is extremely favorable to the Class Members. *See, e.g.*, *In re Fed. Nat'l Mortg. Assoc. Sec., Derivative, & ERISA Litig.*, 4 F. Supp. 3d 94, 103-04 (D.D.C. 2013) (approving settlement that represented between four and eight percent of plaintiffs' estimated best recovery); *Trombley*, 759 F. Supp. 2d at 25-26 (finding settlement that represented between 17% and 24% of estimated trial recovery to be reasonable); *In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65-66 (D.D.C. 2003) (approving settlement that represented 16% of plaintiffs' best-case-scenario damages, and between 32.5 and 54% of defendants' damages estimate). Although not applicable to the Settlement, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the Class Members at trial.'" *Linney v. Cellular Alaska P'ship*, 151 F. 3d 1234, 1242 (9th Cir. 1998).

Fourth, and relatedly, the Settlement and the Claims Administration processes, in particular the use of the pre-populated Claim Forms, automatic CLS Settlement Payments, and payment upon a "check the box" affirmation without any requirement to produce documentation

in order to receive the CLS Settlement Payment, exemplify an effective method of getting Settlement payments to the Class Members. *See, supra,* Sections III.B. and F.

Fifth, the present stage of the litigation weighs in favor of settlement. Plaintiffs, through counsel and their consultants, conducted a thorough investigation of the facts and circumstances relevant to the Action. Moreover, the continued litigation of this matter will require (and has already required) substantial resources, and any such additional litigation effort is unlikely to achieve enhanced results achieved by the Settlement.

Sixth, the proposed Settlement treats Class Members equitably relative to each other. As noted, the CLS Settlement Payment represents for all Authorized Claims a full recovery of cost-sharing and any Balance Bill Settlement Payment represents 25% of any demonstrated payments made for any balanced bill amount.

Finally, Plaintiffs are not aware of any agreement that is required to be identified under Rule 23(e)(3).

In light of foregoing, the Settlement is an outstanding result and constitutes a fair, adequate, and reasonable proposal that warrants preliminary approval and the giving of Notice to the Class Members pursuant to Rule 23(e).

## V.      THE PROPOSED NOTICE IS APPROPRIATE AND SHOULD BE APPROVED

Pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, and based on the belief that the proposed Settlement meets preliminary approval requirements, giving Notice to the Class is justified and warranted. Pursuant to the proposed Preliminary Approval Order, the parties request that the Court authorize Notice to the Class in the form and manner annexed as Exhibit A-1 to the Stipulation.

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all

class members who would be bound by" and Rule 23(c)(2)(B) further instructs that "the court must direct to class members the best notice that is practicable under the circumstances." The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (*citing Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173–74 (1974)). In addition, notice must fairly describe the litigation and the proposed settlement and its legal significance. *See, e.g.*, *Newberg on Class Actions* § 8:17. When all Class Members cannot be identified, other methods of providing notice— such as publication in newspapers and periodicals—are deemed sufficient. *See, e.g., In re Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs. Inc.*, 2003 U.S. Dist. LEXIS 122293, at *3-4 (D.D.C. June 16, 2003).

The Notice clearly complies with these basic requirements and due process. The Notice outlines the basic terms of the Settlement; details the factual background and procedural history of the Action; explains the reasons and benefits of the Settlement; provides the release the Released Parties will receive pursuant to the Settlement; details Plaintiffs' Counsel's Fee Application; specifies the rights of Class Members to exclude themselves from the Settlement; tells the whereabouts, date, and time of the Final Approval Hearing; and specifies the rights of Class Members to object to the Settlement and/or the Fee Application and to appear at the Final Approval Hearing. The Notice (at pgs. 11-13) details for Class Members the necessary steps to take should they wish to opt-out of the Class and Settlement, along with the legal repercussions of being bound by the Settlement. Furthermore, Plaintiffs' Counsel and counsel for the Defendants are identified in the Notice, as well are the addresses and telephone numbers where Class Members can use to ask questions or seek additional information.

The deadlines for objections and requests for exclusion are all before the Final Approval Hearing, and the deadline for Plaintiffs' Counsel to file their papers in support of the Settlement precede the objection and exclusion deadlines (*see* chart at Section VII, *infra*).

The Notice is written in a neutral style and states that the Court is expressing no opinion on the merits of the case or the Settlement. The Class Notice Program constitutes sufficient notice to persons entitled to receive it and satisfies all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the constitutional requirement of due process. As detailed in Section III.F., *supra,* the proposed Class Notice plan—direct mail Notice to Class Members identified through Defendants' records, publication of the Summary Notice and a dedicated Settlement Website, with a toll-free telephone line—satisfies the requirements of Rule 23 and all relevant due process concerns. The Settlement is designed to give the best notice practicable, is tailored to reach members of the Class, and is reasonably calculated under the circumstances to apprise the Class of the Settlement and their rights and options.

## VI.  CERTIFICATION UNDER FEDERAL RULES 23(a) AND (b) IS APPROPRIATE

Before granting preliminary approval of a class action settlement, it is appropriate for a Court to certify a class for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement Class and persons excluded from it are described at Section III.A, *supra*, and in the Stipulation at ¶1.7. The determination of whether a suit should be certified as a class action is left to the discretion of the court. *See Lightfoot v. D.C.*, 246 F.R.D. 326, 335 (D.D.C. 2007).

### A.  Plaintiffs Satisfy the Requirements of Federal Rule 23(a)

Rule 23(a) sets forth the following prerequisites for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are satisfied here.

### i.   Numerosity Is Satisfied

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." While there is no bright line rule regarding the number of Class Members that will satisfy the numerosity prerequisite of Rule 23, courts in this jurisdiction and elsewhere have held that a proposed class of even forty members generally satisfies the numerosity requirement. *See, e.g.*, *Damus v.* Nielsen, 313 F. Supp. 3d 317, 331 (D.D.C. 2018); *Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996), *aff'd in part, rev'd in part,* 139 F.3d 227 (D.C. Cir. 1998). Thousands of potential CLS Claims (indicative of thousands of insured Class Members) were identified through the Defendants' records.

### ii.   Commonality Is Satisfied

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This rule does not require that "every issue of law or fact be the same for each class member." *Bynum v. District of Columbia*, 217 F.R.D. 43, 46 (D.D.C. 2003). Rather, "[t]he commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 198 (D.D.C. 2000) (internal quotation marks omitted). Because the commonality requirement may be satisfied by a single common issue, courts have noted that it is "often easily met." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 259 (D.D.C. 2002).

Here, like in *Garza v. Hargan*, 304 F. Supp. 3d 145, 156 (D.D.C. 2018) which found commonality when proposed class members each suffered the same injury of deprivation of their

right to pregnancy-related care without interference, the Plaintiffs' and other Class Members' claims stem from a common course of conduct.  Plaintiffs' claims arise out of the same nucleus of operative facts and are based on the common legal theory that the Defendants' coverage for CLS did not comply with the preventive services coverage mandate of the ACA. The fundamental question of law and fact common to all Class members is whether Defendants violated the ACA's mandate of providing access to and coverage for CLS.

### iii.  Typicality Is Satisfied

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23's typicality and commonality requirements "tend to merge" because both serve as "guideposts" as to whether a particular class action is practical and whether the claims of the plaintiff and class are sufficiently interrelated to protect the class members in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

Because Plaintiffs' claims arise from the same course of conduct by Defendants, with respect to their policies and procedures concerning coverage for CLS, as do the other Class Members' claims, Plaintiffs' claims are typical of the Class. Plaintiffs, like all Class Members, did not receive coverage for CLS, because, as Plaintiffs allege, Defendants did not establish the necessary policies and procedures to provide CLS coverage and adjudicate CLS Claims consistent with the ACA and with no cost-sharing. Additionally, Plaintiffs' and all other Class Members' claims are premised on the same legal theories under the ACA, ERISA and violation of plan documents. Moreover, the Class Members have suffered "the same injury", *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011), in wrongfully having to incur costs for CLS. And, the relief sought to rectify these violations, *i.e.* damages in terms of the monetary

retrospective relief, is appropriately delivered in the form of a full reimbursement for cost-sharing (the CLS Settlement Payment). Further, Plaintiffs are not aware of any unique defenses rendering them atypical. Therefore, Plaintiffs satisfy the typicality requirement of Rule 23(a)(3).

### iv.   Adequacy Is Satisfied

Finally, Rule 23(a)(4) requires that the proposed representatives will fairly and adequately protect the interests of the Class. This requirement is satisfied where, as here, the named Plaintiffs (1) have no conflicts of interest with the other Class Members, and (2) will vigorously prosecute the action on behalf of the class through qualified counsel. *See McReynolds v. Sodexho Marriott Servs., Inc.*, 208 F.R.D. 428, 446 (D.D.C. 2002).

Here, as noted above, the Plaintiffs have the same interests as other Class Members. Moreover, Plaintiffs have no known interests adverse or antagonistic to those of the Class Members they seek to represent and have already demonstrated a commitment to the prosecution of the Action.

Also, Plaintiffs are represented by Chimicles & Tikellis LLP, a firm with extensive experience in litigating complex litigation and consumer class actions. The Chimicles Firm has been appointed class counsel in prior cases, and has the resources necessary to prosecute this action to its conclusion. *See* Exhibit 2, hereto (C&T Firm Resume). The Chimicles Firm's track record in consumer cases is exemplary. *See, e.g.*, *Ardon v. City of Los Angeles*, Case No. BC361469 (Superior Court, County of Los Angeles) ($92.5 million recovery of improperly collected telephone taxes; two companion cases, *McWilliams v. City of Long Beach*, Case No. BC361469 and *Granados v. County of Los Angeles*, Case No. BC361470 (Superior Court, County of Los Angeles) had settlements approved totaling more than $32 million); *Lockabey v. American Honda Motor Co.*, Case No. 37-2010-87755 (Superior Ct., San Diego) (settlement

valued at $170 million resolved false advertising claims); *Rodman v. Safeway Inc.*, No. 11-3003-JST (N.D. Cal.) ($42 million summary judgment in favor of consumer class of online purchasers). Thus, the requirements of Rule 23(a)(4) are satisfied.

**B.      Plaintiffs Satisfy the Requirements of Rule 23(b)**

The Court must also determine whether the action falls within one of the three "types" of class actions provided for by Rule 23(b). *DL v. D.C.*, 302 F.R.D. 1, 9 (D.D.C. 2013). Here, the Class is maintainable under both Rule 23(b)(1) and (b)(3).

First, the Action is maintainable pursuant to Rule 23(b)(1)(A) because permitting individual actions to be prosecuted against the Defendants arising out of the same alleged misconduct would plainly create a risk of "inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct" for the Defendants. For the same reasons, the Action is maintainable pursuant to Rule 23(b)(1)(B), since individual actions would serve as "adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of the other members not parties to the adjudications"—namely, all other potential CLS claimants—"or substantially impair or impede the other members' ability to protect their interests."

Second, the Action can be maintained pursuant to Rule 23(b)(3) which authorizes class actions to proceed where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class

members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

"In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Where, as here, a court is deciding on the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes do not have to be considered. *Id*. at 619. The remaining elements or Rule 23, however, continue to apply in settlement-only certification situations. *Id.*

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 623. "Rule 23(b)(3) does not require that *all* questions of law or fact be common; it only requires that the common questions *predominate* over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981) (emphasis added); s*ee also* William B. Rubenstein, *Newberg on Class Actions*, § 4:51 (5th ed. 2017) (citing cases in accord). "[C]ourts are more inclined to find the predominance test met in the settlement context." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (internal quotations and citation omitted).

Several issues of law and fact are common to all Class Members as set forth in Section VI.A.  Specifically, Defendants' policies and procedures with respect to CLS coverage and whether Defendants failed to provide its insureds with CLS coverage in accordance with the ACA, are legal and factual issues that "predominate over any questions affecting only individual members" and support that the proposed class is "sufficiently cohesive to warrant adjudication

30

by representation." *Howard v. Liquidity Servs.*, 322 F.R.D. 103, 136 (D.D.C. 2017) (*citing Amchem*, 521 U.S. at 623).

A class action is also "superior to other available methods for fairly and efficiently adjudicating the controversy," per Rule 23(b)(3), because "most of the plaintiffs would have no realistic day in court if a class action were not available." *Howard,* 322 F.R.D. at 141 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)). A case will often meet this standard when 'common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit.'" *Bynum v. D.C.*, 217 F.R.D. 43, 49 (D.D.C. 2003) (citations omitted). Resolution of the claims of Class Members through the settlement of a class action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication and because of the relatively low dollar amount of actual damages sustained by each member of the Class. *See* Fed. R. Civ. P. 23(b)(3). Absent certification, potential class members would lack incentive to pursue individual claims due to the relatively small individual amounts at issue. Also, of course, the Settlement represents a full recovery of cost-sharing incurred on each CLS Claim, which is a meaningful sum to each Class Member, and substantial prospective relief that no individual litigant would likely obtain on an individual basis. At bottom, the expense of litigating each individual claim would be prohibitive.

Accordingly, the requirements of Rule 23(a) and (b) are met, and the Class should be preliminarily certified for settlement purposes.

## VII.   PROPOSED SCHEDULE OF EVENTS

Finally, in connection with the preliminary approval of the Settlement, the Parties request that the Court establish certain relevant deadlines. Specifically, the Parties propose the following schedule, as reflected in the Stipulation and proposed <u>Preliminary Approval Order (Exhibit A to</u>

31

the Stipulation), including that the Final Approval Hearing be scheduled to take place approximately 120 calendar days after the entry of the Preliminary Approval Order:

| Event | Deadline |
|---|---|
| Dissemination of Notice to the Class | 45 calendar days after entry of the Preliminary Approval Order |
| Publication of the Summary Notice | 10 calendar days after the mailing of the Notice |
| Deadline for Plaintiffs to file and serve papers in support of the Settlement and the Fee Application | 14 calendar days prior to the Deadline for objections and exclusions |
| Deadline for Class Members to file any objections to the Settlement or Fee and Expense Application | 30 calendar days prior to the Final Approval Hearing |
| Deadline for Class Members to file exclude themselves from the Settlement | 30 calendar days prior to the Final Approval Hearing |
| Deadline for the filing of affidavits/declarations with respect to the preparation and mailing of the Notice and the publication of the Summary Notice | 14 calendar days prior to the Final Approval Hearing |
| Deadline for Plaintiffs to file and serve a response to any objections | 7 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing | To be set approximately 120 calendar days after entry of the Preliminary Approval Order |
| Submission of completed proofs of claim (*e.g.* Class Member seeking to be an Authorized Claimant who submits to the Claims Administrator a completed Proof of Claim, corrected Proof of Claim or Claims Data Sheet,  and/or a CLS affirmation) | Postmarked by no later than ninety (90) days after the date of the Final Approval Hearing |

## VIII.   **CONCLUSION**

For the foregoing reasons, the Plaintiffs respectfully request that the Court grant the motion for preliminary approval and enter the Preliminary Approval Order, Exhibit A to the Stipulation of Settlement.

DATED: December 10, 2018

/s/  *Nicholas E. Chimicles*
Nicholas E. Chimicles
Kimberly Donaldson Smith
32

Stephanie E. Saunders
**CHIMICLES & TIKELLIS LLP**
One Haverford Square
361 West Lancaster Ave.
Haverford, PA 19041
(610) 642-8500

Jonathan W. Cuneo, D.C. Bar No. 939389
Pamela B. Gilbert, D.C. Bar. No. 418207
Monica E. Miller, D.C. Bar. No. 442857
Katherine Van Dyck, D.C. Bar. No. 981272
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Phone: (202) 789-3960

*Attorneys for Plaintiffs and Proposed Class*

33

## CERTIFICATE OF SERVICE

I, Nicholas E. Chimicles, hereby certify that on December 10, 2018, a copy of the foregoing **PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SETTING OF A FINAL APPROVAL HEARING** was electronically filed and notice of this filing was sent to all counsel of record via the Court's CM/ECF System.

**CHIMICLES & TIKELLIS LLP**

*/s/  Nicholas E. Chimicles*
                 Nicholas E. Chimicles