# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDSAY FERRER, AMY HADDAD and SARAH SORSCHER on behalf of themselves and all others similarly situated, | )<br>) Case No. 1:16-cv-02162-APM<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| CAREFIRST, INC.; GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC. d/b/a CAREFIRST BLUECROSS BLUESHIELD; CAREFIRST OF MARYLAND, INC., d/b/a CAREFIRST BLUECROSS BLUESHIELD; CARE FIRST BLUECROSS BLUESHIELD; and CAREFIRST BLUECHOICE, INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFFS' MOTION AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, <u>AND PAYMENT OF SERVICE AWARDS TO PLAINTIFFS</u>**

Plaintiffs Lindsay Ferrer, Amy Haddad and Sarah Sorscher ("Plaintiffs" or "Class Representatives),[1] individually and on behalf of the proposed Settlement Class, respectfully submit this motion for an award of attorneys' fees and reimbursement of expenses to Class Counsel,[2] as well as for the payment of incentive awards to Plaintiffs in connection with final approval of the Proposed Settlement.

Pursuant to the terms of the Settlement Agreement, Class Counsel respectfully ask this Court to: (1) award attorneys' fees and reimbursement of litigation costs in the amount of

---

[1]      Unless otherwise noted, capitalized terms have the same meaning as contained in the Settlement Agreement. (Dkt. No. 30-1 ("Agreement")).

[2]      This Fee Application is filed on behalf of Class Counsel, Chimicles Schwartz Kriner & Donaldson-Smith LLC ("Chimicles Firm", formerly known as Chimicles & Tikellis LLP), and Local Counsel, Cuneo Gilbert & LaDuca LLP.

$3,000,000 to be paid by the CareFirst Defendants separate and apart from the monetary benefits paid to the Settlement Class; and (2) authorize payment of service awards of $2,500 each to the Class Representatives.

CareFirst has agreed to pay the Court-awarded attorneys' fees and expenses, as well as service awards, but has reserved the right to oppose such award.

In support of this request, Class Counsel respectfully submit the Memorandum of Points and Authorities incorporated below, and the Declaration of Kimberly Donaldson-Smith which includes, as exhibits, *inter alia*, the Declaration of Kathleen P. Chimicles, ASA of GlenDevon Group, Inc. ("GDG Decl.") (Exhibit 4), Declaration of Claims Administrator (Denise Earle of Angeion Group) (the "Earle Decl.") (Exhibit 5); Declaration of Monica Miller, on behalf of Cuneo Gilbert & LaDuca, LLP ("Miller Decl."), (Exhibit 6), and a Proposed Order (Exhibit 3). Furthermore, Class Counsel has filed concurrently and respectfully refer the Court to Plaintiffs' Motion and Incorporated Statement of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement.

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     DESCRIPTION OF CLASS COUNSEL'S EFFORTS.......................................................2

III.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES
        AND EXPENSE REIMBURSEMENT IS REASONABLE AND
        AUTHORIZED BY THE SETTLEMENT AGREEMENT .................................................4

        A.      The Fee Request Should be Assessed
                Under the Percentage-of-the-Fund Method ..............................................5

        B.      The Lodestar Calculation Cross-Check Confirms
                The Reasonableness Of The Requested Fee ..........................................9

IV.     CLASS COUNSEL'S COSTS ARE REASONABLE
        AND WERE NECESSARILY INCURRED ..................................................................10

V.      SERVICE AWARDS SHOULD BE
        AWARDED TO THE NAMED PLAINTIFFS ................................................................11

VI.     CONCLUSION...................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Campbell v. District of Columbia*,
    202 F. Supp. 3d 121 (D.D.C. 2016) ...................................................................................11

*Ceccone v. Equifax Information Services, LLC*,
    No. 13-cv-1314 (KBJ), 2016 U.S. Dist. LEXIS 127942 (D.D.C. Aug. 29,
    2016) ............................................................................................................................ *passim*

*Cohen v. Chilcott*,
    522 F. Supp. 2d 105 (D.D.C. 2007) .......................................................................................7

*Copeland v. District of Columbia*,
    No. 13-837 .............................................................................................................................11

*Daniels v. District of Columbia*,
    No. 14-665DAR, 2017 WL 1154948 (D.D.C. Mar. 27, 2017) ............................................11

*Dickens v. Friendship-Edison Pub. Charter Sch.*,
    724 F. Supp. 2d 113 (D.D.C. 2010) .....................................................................................10

*Howard v. Liquidity Servs.*,
    Case No. 14-1183 (BAH), 2018 U.S. Dist. LEXIS 17232 (D.D.C. Oct. 5,
    2018) .......................................................................................................................................8

*In re Lorazepam*,
    2003 U.S. Dist. LEXIS 12344 ........................................................................................7, 11

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008) ........................................................................................7

*Medford v. District of Columbia*,
    691 F. Supp. 1473 (D.D.C. 1988) ..........................................................................................2

*Salazar ex rel. Salazar v. District of Columbia*,
    809 F.3d 58 (D.C. Cir. 2015) .................................................................................................4

*Swedish Hosp. Corp. v. Shalala*,
    1.F3d 126172 (D.C. Cir. 1993) ..............................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .....................................................................................................6

*Wells v. Allstate Ins. Co.*,
    557 F. Supp. 2d 1 (D.D.C. 2008) .........................................................................................12

*Williams v. First Gov't Mortg. & Investors Corp.*,
   225 F.3d 738 (D.C. Cir. 2000) ................................................................................4

**Other Authorities**

Fed. R. Civ. P. 23(h) ................................................................................................4, 10

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action*
   *Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006)....................................12

I.    **INTRODUCTION**

Plaintiffs negotiated a Settlement with Defendants CareFirst, Inc.; Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield; CareFirst of Maryland, Inc., d/b/a CareFirst BlueCross BlueShield; CareFirst BlueCross BlueShield; and CareFirst BlueChoice, Inc., ("CareFirst")  that provides Settlement Class Members the relief Plaintiffs were seeking when they first filed  this case in 2016.  In short, a Settlement Class Member[1] will receive a cash payment under the Settlement if she received comprehensive breastfeeding support and counseling ("CLS") from August 1, 2012 through August 31, 2018, and paid out-of-pocket for the CLS Claim.  There is no limit on the total dollar amount of the settlement payments that CareFirst may make to Class Members for Authorized Claims.  In addition, the Settlement will result in changes to CareFirst's policies with respect to CLS, including providing insureds with enhanced access to in-network coverage of CLS and adopting CLS claims adjudication practices to assure compliance with applicable law.  Among other things, this Settlement provides full recovery for Class Members who were the subject of cost-sharing for CLS services.  It is an excellent result for the Settlement Class.

Plaintiffs and Class Counsel have moved for Final Approval of the Settlement. Concurrently therewith, and pursuant to the Settlement Agreement, Plaintiffs and Class Counsel respectfully move for (i) an award of attorneys' fees and litigation expense reimbursement in the

---

[1]    The Settlement Agreement defines the "Class" (members of which are called "Class Members") as persons who meet the following criteria:

> All Persons who are or were participants in or beneficiaries of any Non-Grandfathered Health Plan sold, underwritten or administered by CareFirst, Inc., Group Hospitalization and Medical Services, Inc., CareFirst of Maryland, Inc., and CareFirst BlueChoice, Inc. (collectively, "Defendants") in their capacity as insurer or administrator, who did not receive full coverage for and/or reimbursement for comprehensive lactation and breastfeeding support and counseling services ("CLS") received on or after August 1, 2012 through August 31, 2018 (the "Class Period").

amount of $3 million, and (ii) service awards for the named Plaintiffs in the amount of $2,500 each. Pursuant to the Stipulation, CareFirst has agreed to pay the Court-awarded attorneys' fees and expenses, as well as service awards, but has reserved the right to oppose such award. *See* Stipulation ¶¶ 8.2-8.3.

## II.   DESCRIPTION OF CLASS COUNSEL'S EFFORTS

The Donaldson-Smith Declaration (¶¶ 7-92) provides a detailed description of the work performed in this Action by Class Counsel, including an explanation of how billable time for investigations, research, pleading preparation and other work was allocated among the four (4) cases, including this Action, brought by Class Counsel involving similar claims. Donaldson-Smith Decl., ¶ 7, n.3. Such allocation reduced the billable time charged to this case. In addition the Donaldson-Smith Declaration provides aggregate hour and lodestar information at four critical stages of the litigation. *Id.* at ¶ 121.

A brief outline of Class Counsel's efforts is set forth below:

- Investigation, research and analysis of the provisions of the ACA and its legislative history;

- Investigation, research and analysis of the preventive services benefits mandate provided for under the ACA;[2]

- Review and analysis of regulations, information, guidance and Frequently

---

[2]     Compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading complex cases, and productive attorney discussions. *See, e.g., Medford v. District of Columbia*, 691 F. Supp. 1473, 1480 (D.D.C. 1988) (stating that it is "established law that work done prior to the formal inception of a proceeding is subject to a fee award," including "attorney-client interviews, investigation of the facts of the case, research on the viability of potential legal claims, drafting of the complaint and accompanying documents, and preparation for dealing with expected preliminary motions and discovery requests" (*quoting Webb v. Bd. of Educ. of Dyer Cty.*, Tenn., 471 U.S. 234, 250 (1985) (Brennan, J., concurring in part and dissenting in part)).

Asked Questions ("FAQs") issued by the Departments of HHS, Labor, and the Treasury (the "Tri-Departments"), which were charged with implementing the ACA, including PHS Act Section 2713;

- Review of commentary by practitioners and industry experts about CLS and CLS coverage under the ACA;

- Consultation with industry experts and practitioners about CLS and CLS coverage under the ACA, and implementation of CLS coverage;

- Conducted informational meetings and fact gathering with lactation organizations and advocacy and policy groups, such as the National Women's Law Center located in Washington, D.C.;

- investigation into the handling of coverage of CLS by other insurance companies;

- review and investigation of CareFirst's outward, consumer facing policies and statements concerning CLS (including CareFirst's Medical Policies and Preventive Service Guidelines);

- Analysis of CareFirst's positions and insureds' assertions/declarations in proceedings before the Maryland Insurance Commissioner concerning CLS;

- Analysis of CareFirst's plan documents and Plaintiffs' claims and explanation of benefits with respect to CLS;

- Plaintiffs' propounding, receipt and analysis of discovery and information from CareFirst with respect to its policies on CLS coverage, its network composition of CLS providers, and its adjudication of CLS Claims;

- Significantly, Plaintiffs sought and ultimately were provided, in multiple

productions, the CLS claims submitted to CareFirst from August 1, 2012 through

August 30, 2018, including the amount of cost-sharing applied for each Claim; and,

- Plaintiffs' counsel and consultants were successful in reaching agreement

with the CareFirst team with respect to the creation of the four claims categories, the

characteristics of the claims that would populate each category, and the allocation of

all the potential CLS Claims into its proper category.   Not only was this a

monumental achievement, but it made it possible for the Parties to reach agreement

for "no proof of claim" and the single "affirmation" proof of claim categories that

could only be possible by significant groundwork being performed before submission

of the Settlement for Court approval.

### III.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSE REIMBURSEMENT IS REASONABLE AND AUTHORIZED BY THE SETTLEMENT AGREEMENT

At the conclusion of a successful class action, class counsel may apply to a court for an

award of attorneys' fees. See Fed. R. Civ. P. 23(h). The amount of an attorneys' fee award is

within the district court's discretion so long as it employs the correct standards and provides a

"concise but clear explanation of its reasons." *Williams v. First Gov't Mortg. & Investors Corp.*,

225 F.3d 738, 747 (D.C. Cir. 2000) (recognizing that the district court is best positioned to

determine an appropriate fee award); *see also, e.g., Salazar ex rel. Salazar v. District of

Columbia*, 809 F.3d 58, 63 (D.C. Cir. 2015) ("We review the district court's fee awards for

abuse of discretion, and will not upset its hourly rate determination absent clear misapplication

of legal principles, arbitrary fact finding, or unprincipled disregard for the record evidence.").

As indicated in the Court-approved Notice disseminated to the Settlement Class, Class Counsel

may request attorneys' fees and costs in the amount of up to $3 million, to be paid exclusively

by CareFirst, separate and apart from the settlement payments to be made to Settlement Class Members. *See* Stipulation ¶¶ 8.3.

Not only does the Settlement provide for reasonable attorneys' fees and expenses to be paid by CareFirst, but Class Counsel's requested attorneys' fees fall within the acceptable range of fees routinely approved in this District and Circuit.

Class Counsel's fee request here amounts to $2,236,875; its expense reimbursement request totals $763,125. The sum of these amounts is $3 million. As discussed in the Donaldson-Smith Declaration, and *infra* at Section III.B. Class Counsel will be active post-Settlement approval to perform work to implement and monitor the Settlement, including re-processing of denied claims, and to distribute the Settlement proceeds that will not be separately compensated.

Thus, whether the fees are measured as a percentage-of-the-fund or with reference to lodestar/multiplier, the future billable time and expenses incurred by Class Counsel render the requested fee award even more reasonable.

**A.      The Fee Request Should be Assessed Under The Percentage-of-the-Fund Method**

The fee request should be assessed under the percentage-of-the-fund method which is the method routinely approved by courts in class actions. Indeed, in 1993, the D.C. Circuit adopted the percentage-of-the-fund approach, "primarily because it is more efficient, easier to administer, and more closely reflects the marketplace." *Swedish Hosp. Corp. v. Shalala*, 1.F3d 1261, 1270-1272 (D.C. Cir. 1993) (noting that the Eleventh Circuit was the first circuit court to mandate the percentage-of-the-fund method as the proper method for calculating attorneys' fees in common fund cases and concluding that the D.C. Circuit joins the Eleventh Circuit in ruling the same).

The lodestar-multiplier method of assessing a fee petition is fraught given that it "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005); *accord Swedish Hospital*, 1 F.3d at 1267 (the lodestar process "creates a disincentive for the early settlement of cases").

The Court's first step in assessing Class Counsel's fee petition is to determine the estimated value of the Settlement. As in *Ceccone v. Equifax Information Services, LLC*, No. 13-cv-1314 (KBJ), 2016 U.S. Dist. LEXIS 127942 (D.D.C. Aug. 29, 2016), this is a multi-component Settlement whose value can be calculated based on reasonable assumptions and methodology. In *Ceccone*, Judge Jackson considered all of the following settlement benefit components: the cash fund for actual damages $850,000; attorneys' fees and costs of $850,000; the cost of notice and administration of approximately $88,500; and Equifax's providing all 8,400 class members with "four years of a premium credit-monitoring service, which, according to the parties, has a value of $717.60 per class member," or a total of $6,034,298.40.[3] Therefore, it is proper in measuring the benefits conferred on the Settlement Class in this case to value the following retrospective relief components (*see* GDG Decl. ¶9-15):

A. **Retrospective Relief**

| | | |
|---|---|---|
| 1) | No PC Claims | $316,000 |
| 2) | Affirmation Group (assumes 80% response rate) | $2,168,000 |

---

[3]     The *Ceccone* Court noted that the $717.60 per class member value placed on the four-year monitoring service may be high compared to a $180 cash conversion price that such service had in another similar litigation. At that amount, the monitoring element's value was $1,513,620 (not $6 million). *Ceccone*, 2016 U.S. Dist. LEXIS 127942, at *29, n.2. In this case, there is no comparable issue with respect to retrospective relief value inasmuch as Class Members' will be aimed at assuring zero cost-sharing and will be based on actual amounts already paid.

| | | | |
|---|---|---|---|
| | 3) | Balance Bill No PC/PC Claims (assumes 80% response rate) | $41,800 |
| | 4) | Denied Claims (assumes 25% response rate) | $542,500 |
| | 5) | Balance Bill Claims (assumes 80% response rate) | $34,500 |
| | 6) | Claims not Previously Submitted | $340,000 |
| | | | $3,442,800[4] |
| **B.** | | **Attorneys' Fee & Expense Award** | $3,000,000 |
| **C.** | | **Service Awards to Named Plaintiffs** | $7,500 |
| **D.** | | **Notice & Administration Costs**[5] | $530,000-$720,000 |
| **E.** | | **Total Retrospective Relief:**[6] | $6,980,300-$7,170,300 |

The D.C. Circuit has held that "'a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases' like this one." *Ceccone*, 2016 U.S. Dist. LEXIS 127942, at *27 (quoting *Swedish*, 1 F.3d at 1271); *accord Cohen v. Chilcott*, 522 F. Supp. 2d 105, 122 (D.D.C. 2007). "[I]t is generally well-established that 'fee awards in common fund cases may range from fifteen to forty-five percent.'" *Lorazepam & Clorazepate Antitrust Litigation*, 2003 U.S. Dist. LEXIS 12344 at *7 (D.D.C.

---

[4]    As noted in the GDG Declaration, the retrospective relief may have a value upwards of $4 million. GDG Decl., ¶ 9.  Plaintiffs' counsel has used the more conservative total.
[5]    See Earle Decl., Ex. 5 at ¶ 21.
[6]    Plaintiffs' Counsel will use the average of this range, or $7.075 million, for purposes of addressing the fee award.  In addition to retrospective relief, it is appropriate to include the value of prospective relief among the Settlement benefits. *See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (valuing injunctive relief "for purposes of determining Class Counsel's fee" is proper even if "the value of the injunctive relief cannot be precisely and mathematically ascertained …").

2003).[7]  "In 'a majority of common fund class action[s],' attorneys' fee 'awards fall between twenty and thirty percent' of the fund."  *Howard v. Liquidity Servs.*, Case No. 14-1183 (BAH), 2018 U.S. Dist. LEXIS 17232, at *27-28 (D.D.C. Oct. 5, 2018).

Among factors considered by courts in this Circuit in applying the percentage-of-recovery method are the size of the fund created and number of persons benefitted; presence or absence of substantial objections by class members to the settlement terms or fees; the skill and efficiency of the attorneys involved, the complexity and duration of the litigation, the risk of non-payment, the amount of time devoted by plaintiffs' counsel and the awards in similar cases. Measured by each of these criteria, Class Counsel's fee petition should be granted in full.  In most common fund cases, the awarded fees and litigation expenses are subtracted from – *i.e.* diminish – the common fund.  Under that zero sum model, every dollar in awarded fees and expenses reduces the allocable distributions to class members.

This Settlement is structured differently, and more favorably, to Settlement beneficiaries, who are assured to receive full recovery for improper cost-sharing, undiminished by any fee and expense award.  And the aggregate distributions to Class Members have no ceiling.  Moreover, Defendants' insureds will receive fully-ACA compliant treatment and administration of future CLS claims under the terms of the Settlement.

In *Ceccone*, a case having similar features to the Settlement here, the court made special note of the fact that awarded attorneys' fees, expenses and service awards would not reduce class members' benefits and, thus, "the class recovery is significant."  *Ceccone*, 2016 U.S. Dist. LEXIS 127942, at *31.  Also, it is uncontroverted that Class Counsel took on this ground-

---

[7]      In *Ceccone*, the court's award amounted to 35% of the settlement value if the $180 rather than the $717 value per class member's receipt of monitoring services was used.  *See* fn. 3, *supra*; *Ceccone*, 2016 U.S. Dist. LEXIS 127942, at *29, n.2.

breaking case with no assurance of successful resolution or of payment of fees, and moreover, incurred litigation expenses of $763,124. *See* Donaldson-Smith Decl., ¶¶ 135-141. Class Counsel's experience generally in complex and class action litigation has few peers (*see id.* at ¶¶ 7-33) and specifically in ERISA litigation involving CLS benefits is without equal. The duration of this case mimics that in *Ceccone*. By any measure, the requested fee representing a maximum 31% of the common fund created is reasonable under this Court's percentage-of-the-fund method. *Id.* at ¶ 116.

**B.  The Lodestar Calculation Cross-Check Confirms The Reasonableness Of The Requested Fee**

No cross-check using the lodestar method of assessing a fee request is required in this Circuit. *See Ceccone*, 2016 U.S. Dist. LEXIS 127942, at *33-34 (citing *In re Black Farmers Discrimination Litigation*, 953 F. Supp. 2d 82, 101 (D.D.C. 2013)). Even if not required, courts in this Circuit "are free to employ such a cross-check at their discretion to confirm the reasonableness of an award" (*id.*), and such a cross-check here confirms that the proposed fee is reasonable and should be approved.

Class Counsel's billable time comprises more than 1,750 hours as of February 18, 2019, translating into a lodestar of $1,086,855.75. *See* Donaldson-Smith Decl., Ex. 7; *see also* Miller Decl., ¶ 6. Adding to this the 200 billable hours Class Counsel expect to incur through final approval proceedings and monitoring and reportorial tasks that will be performed following final approval yields a total lodestar of $1,216,866. *See* Donaldson-Smith Decl., ¶¶ 129-133; *see also* Stipulation ¶ 3.3.

As the *Ceccone* Court noted, courts "typically apply multipliers 'ranging up to four' to lodestar calculations in common fund cases." *Ceccone*, 2016 U.S. Dist. LEXIS 127942, at *34 (quoting *Black Farmers*, 953 F. Supp. 2d at 102). "A multiplier is also particularly appropriate

in contingency fee cases, to reflect the risk of loss that the attorneys assume." *Id.* (citing *In re Abrams & Abrams, P.A.*, 605 F. 3d 238, 245-246 (4th Cir. 2010); *McIntosh v. McAfee, Inc.*, No. C06-0794, 2009 U.S. Dist. LEXIS 20505, at *3 (N.D. Cal. Mar. 13, 2009)).  As in *Ceccone*, a multiplier in this case of less than 2.0 "'falls well within a range that is fair and reasonable'." *Ceccone*, 2016 U.S. Dist. LEXIS 127942, at *35 (quoting *In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 19-20 (D.D.C. 2003)).

A reasonable multiplier is also proper here to reflect the "degree of the plaintiff's overall success." *Dickens v. Friendship-Edison Pub. Charter Sch.*, 724 F. Supp. 2d 113, 121 (D.D.C. 2010) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989)).

## IV.   CLASS COUNSEL'S COSTS ARE REASONABLE AND WERE NECESSARILY INCURRED

Class Counsel also request reimbursement for a total of $763,124.54 in certain litigation costs and expenses. *See* Donaldson-Smith Decl., ¶¶ 134-141.  This sum corresponds to out-of-pocket costs and expenses that Class Counsel necessarily incurred, in connection with the prosecution of this litigation and the Settlement, and which are itemized in the Donaldson-Smith Decl., at Ex. 8.  Such costs are compensable in a class action.  *See* Fed. R. Civ. P. 23(h) (permitting award of "nontaxable costs that are authorized by law or by the parties' agreement").

The categories of expenses for which Class Counsel seek reimbursement here are the type of expenses routinely charged to paying clients in the marketplace and, therefore, the full requested amount should be reimbursed.  *See* Donaldson-Smith Decl., ¶¶ 135-141.  These expenses include but are not limited to: experts and consultants' fees; filing and service fees; photocopies; travel expenses, and research fees.  *Id.*  These expenses are reasonable and justified, and Class Counsel is typically entitled to reimbursement of all reasonable out-of-picket expenses

and costs in prosecution of the claims and in obtaining a settlement.  *See, e.g., Daniels v. District of Columbia*, No. 14-665DAR, 2017 WL 1154948, at *6 (D.D.C. Mar. 27, 2017) (approving costs that included the same categories as those requested here); *Copeland v. District of Columbia*, No. 13-837 CRC/DAR, 2016 WL 5342702, at *6, (D.D.C. Aug. 29, 2016)(same); *Campbell v. District of Columbia*, 202 F. Supp. 3d 121, 137-38 (D.D.C. 2016)(same).

Special mention is appropriate with respect to the amount of experts' and consultants' fees that comprise a significant portion of the expense reimbursement.  In particular, GDG's billings for this case equal $679,000.  Without the work of GDG, and that of the consultants whose assistance GDG supervised and utilized, there could not have been achieved the type of comprehensive resolution and settlement structure ultimately reached.  As the GDG Declaration explains in detail, GDG analyzed, and thereby made it possible for Plaintiffs' Counsel to understand and properly utilize the CareFirst data.  Attorneys are simply not equipped to do that kind of highly specialized and analytical work.  At bottom, Class Counsel could not have achieved the landmark results achieved in this case without GDG's intimate and extensive involvement.  And, as with Class Counsel (*see* Donaldson-Smith Decl. ¶ 7, n.3), GDG's time and expenses that were applicable to cases beyond this Action were allocated among such cases thereby reducing the amounts billable to this case (*see* GDG Decl. ¶ 17).

## V.    SERVICE AWARDS SHOULD BE AWARDED TO THE NAMED PLAINTIFFS

The Settlement also provides for a $2,500 service award to be paid to each of the three named Plaintiffs.  If awarded, such service award will be paid by CareFirst.  *See* Stipulation, ¶¶ 1.27, 8.1, 8.3.  "Courts in this circuit have recognized that such incentive awards to class representatives are a typical feature of class action litigation."  *Ceccone*, 2016 U.S. Dist. LEXIS 127942, at *31; *see In re Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at *10 ("This Court has

previously determined that incentive awards to named plaintiffs are not uncommon in class action litigation, particularly where a common fund has been created for the benefit of the entire class") (approving an award of $5,000 to the named plaintiff).

In this case, the class representatives invested appreciable time in communicating with Class Counsel, monitoring the prosecution of the case, and participating in substantive discussions regarding the progress and ultimate resolution of the case. *See* Donaldson-Smith Decl., ¶¶ 142-146.

Class Counsel respectfully submit that each Plaintiff should receive a reasonable and modest service award of $2,500 for their efforts in this action. Each Class Representative actively assisted in the prosecution and settlement of this case. *See id.* They provided detailed information and documents concerning the allegations in the complaint filed, participated in phone calls with Class Counsel, and remained informed about the status of the litigation – including discussing the terms of the proposed settlement and ensuring that the Settlement Agreement was in the best interests of the Settlement Class Members.

In short, the requested awards appropriate recognize the Representative Plaintiffs' efforts and contributions and are well within the range of the incentive awards granted in other cases in this Circuit. *See, e.g., Trombley*, 826 F. Supp. 2d at 207-208 (Bates, J.) ($5,000 incentive award); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 9 (D.D.C. 2008) ($10,000 incentive award to each named plaintiff); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80). The Notice informed Settlement Class Members about these anticipated Service

Award requests, and no objection has been made to them to date (or to any other aspect of the Settlement for that matter).  Plaintiffs thus respectfully request that they be reasonable rewarded for the contributions to this litigation and the excellent result obtained for the Settlement Class.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully submitted that Class Counsel's Fee Application be granted in full, that Class Counsel be awarded $3 million for fees and litigation expenses, and further that the Named Plaintiffs each be granted a service award of $2,500, all such amounts to be paid by Defendants in accordance with the Settlement Stipulation.

Dated: February 22, 2019                              Respectfully submitted,

By:      <u>*/s/ Nicholas E. Chimicles*</u>
Nicholas E. Chimicles (admitted *pro hac vice*)
Kimberly M. Donaldson-Smith (admitted *pro hac vice*)
Stephanie E. Saunders (admitted *pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
nec@chimicles.com
kds@chimicles.com
ses@chimicles.com

Jonathan W. Cuneo, D.C. Bar No. 939389
Pamela B. Gilbert, D.C. Bar. No. 418207
Monica E. Miller, D.C. Bar. No. 442857
Katherine Van Dyck, D.C. Bar. No. 981272
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Phone: (202) 789-3960
Fax: (202) 789-1813

***Attorneys for Plaintiffs and the Class***

13

## <u>CERTIFICATE OF SERVICE</u>

I, Stephanie E. Saunders, hereby certify that on February 22, 2019, a copy of the foregoing **PLAINTIFFS' MOTION AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND PAYMENT OF SERVICE AWARDS TO PLAINTIFFS** was electronically filed and notice of this filing was sent to all counsel of record via the Court's CM/ECF System.

*s/  Nicholas E. Chimicles*
Nicholas E. Chimicles
